# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

———————————————————————

In re:                                                          BKY No.:  09-50779

Dennis E. Hecker,                                                          Chapter 7

                Debtor.

———————————————————————

                                     Adv. Case No.:  10-5004

Randall L. Seaver, Trustee,

                Plaintiff,

vs.

Christi M. Rowan,

                Defendant.

———————————————————————

## APPLICATION FOR DEFAULT JUDGMENT

TO:    CHRISTI M. ROWAN, 1615 NORTHRIDGE DRIVE, MEDINA, MN 55391.

      1.      PLEASE TAKE NOTICE that Randall L. Seaver, Trustee and Plaintiff herein, applies to the Court for the entry of a default judgment against Defendant Christi M. Rowan ("**Defendant**").

      2.      The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§157 and 1334, Bankruptcy 5005 and Local Rule of Bankruptcy Procedure 1070-1.  This is a core proceeding.  The petition commencing this Chapter 7 case was filed on June 4, 2009.  This case is now pending in this Court.

      3.      This is an application for default judgment under Bankruptcy Rule 7055 and Local Rule of Bankruptcy Procedure 7055-1.

      4.      Defendant and Debtor Dennis E. Hecker ("**Debtor**") have been involved in a personal romantic relationship and cohabitate at 1615 Northridge Drive, Medina, MN 55391 ("**Northridge**")

along with some of their children.

5. Debtor has testified that Defendant had resided at Northridge, a home titled in Debtor's name and his former homestead, pursuant to a lease.

6. Defendant's obligations under the purported lease were the issue of a contempt motion in the main bankruptcy case and that issue was resolved by this Court's approval of a settlement between the Trustee and Ralph Thomas, a friend of the Debtor. The settlement, however, did not resolve issues about the personal property within Northridge or any other issues related to this case.

7. Defendant is holding or controlling property of this bankruptcy estate which was owned by the Debtor prepetition, or was purchased with the Debtor's monies prepetition. All of the foregoing is referred to herein as the "**Property**."

8. Upon information and belief, Defendant may nominally control or be the conduit for other assets owned by the Debtor that are held by, or in the name of, the Defendant. The Defendant is a willing participant in a scheme to secrete assets owned by the Debtor. Defendant has assisted with actual fraud upon Debtor's creditors and this bankruptcy estate.

9. Debtor and Defendant each claim that Defendant paid for improvements at Northridge before the commencement of this case. In reality, the Debtor funded the improvements of which the majority of the remodeling was by Brent Rowan, Defendant's former husband, through his company, BCR Construction, Inc.

10. In the year before filing, Northridge was significantly upgraded and many items were purchased for the home.

11.     In January 2009, Chrysler Financial commenced a lawsuit against Hecker seeking a judgment in excess of $400,000.000.00.   In April, 2009, a judgment in the amount of $476,952,874.60 was entered against Hecker.  The Debtor's schedules list assets of $18,509,972.15 and liabilities of $766,754,240.50.

12.     In November of 2008, Defendant leased a 2008 Land Rover Range Rover ("**RR1**") having a sticker price of $96,000.00.  That vehicle has a monthly lease payment of $2,178.16 per month.  The $7,500.00 cash needed at closing of the lease for RR1 was transferred to Defendant by the Debtor.

13.     The same month that Chrysler obtained its judgment, April 2009, the Debtor acquired a new SUV.  The Defendant assisted Debtor in obtaining a vehicle for Debtor.  Defendant returned to the same car dealer where she obtained RR1 and this time, purchased in her name, at a cost of $86,026.00 for a 2008 Land Rover Range Rover ("**RR2**").

14.     In order to purchase RR2, Defendant claimed that she was an attorney earning $189,000.00 per year and provided the dealer with a falsified W2 for the year 2008 to support her asserted income.  Defendant knew that she would not otherwise qualify for financing.

15.     The down payment for RR2 of $13,000.00 was transferred to Defendant by Debtor and $1,000.00 was charged to her Teacher Federal Credit Union ("**TFCU**") credit card.  The monthly payment for RR2 is $1,379.34 bringing the monthly payments for RR1 and RR2 to a total of $3,557.50.  Upon information and belief, Debtor has been funding most or all of the payments for RR1 and RR2., either directly or through conduits.

16.     Defendant claimed that her earned income has not varied significantly since her divorce in the fall of 2008.  However, her bank deposits since that time have significantly varied.

17.     In the year prior to filing, the Debtor caused over $235,000.00 in cash and checks to be transferred to Defendant. Some of those monies were deposited into her account at Trustone Credit Union. The funds came from the Debtor, monies owed to Debtor, accounts funded by Debtor, and from Debtor-controlled entities. A list of apparent cash and check transfers to Defendant deposited into her Trustone Credit Union account is attached to the Complaint as Exhibit E.

18.     Defendant also deposited monies from the Debtor into an account held by her at Associated Bank. Those deposits exceeded at least $40,000.00 in the year prior to filing. An itemization of apparent Hecker funded deposits into that account is attached to the Complaint as Exhibit G.

19.     Defendant also deposited monies transferred from Hecker into an account held at Wells Fargo Bank to which she had access.

20.     Furniture and other personal property, which are property of the bankruptcy estate, are located at Northridge. Virtually anything at Northridge that was not the personal property of Defendant when she left her marriage with Brent Rowan, is property of the bankruptcy estate.

21.     While Debtor claimed that one of his homes in Crosslake was his homestead, in reality, he used the Crosslake property as a recreation facility and did not reside there.

22.     The Debtor made transfers to or for the benefit of Defendant in the year prior to filing, through the charging of items for her benefit on his American Express and Visa cards in an amount exceeding $125,000. Those charges included $60,000 for a fur coat, $15,000 for a watch, over $30,000 for a Harrison Dog, over $11,000 for lodging at the St. Regis Hotel in Aspen, CO, and other charges for lodging in Cabo San Lucas, airfare to Cabo, airfare to Hawaii, and lodging in Cabo San Lucas.

23.     Debtor has funded the Defendant's acquisition of RR1 and RR2, including the initial down payments and subsequent payments.

24.     Debtor paid for Defendant's lease of a luxury Minneapolis apartment located at 150 Portland Avenue South (at the former Whitney Hotel) from 2008 to 2009 at $4,000.00 per month including a $4,000.00 deposit which was due back to Defendant at the commencement of this case.

25.     Debtor has funded tuition for Defendant's daughter at Breck School in an amount which is unknown.

26.     In the year prior to filing, Debtor has paid for Defendant and her family to travel to Mexico, Texas and Hawaii and for her stay at luxury hotels, such as the St. Regis in Aspen, Colorado ($11,555.90).  Examples of costs funded by the Debtor are lodging in Los Cabos, Mexico, which exceeded $3,747.00, travel costs including Phoenix (over $2,147.60), Hawaii (over $6,579.00) for Defendant and her children and discount travel certificates.

27.     In the year prior to filing, the Debtor funded many shopping ventures for Defendant including, but not limited to, Neiman Marcus (over $34,000.00), Gorsuch ($10,680.00), Gucci (Debtor indirectly financed Defendant's purchases in excess of $2,300.00), Belle Reve Boutique (Debtor funded at least $4,343.38) and other luxury retailers.  Debtor has allowed Defendant to use his store credit cards for purchases the amount of which is unknown.  Debtor has funded cosmetic surgery for Defendant at a cost of at least $7,000.00.  Together, the preceding paragraphs, including the Lease constitute the "**Transfers**."

28.     As used herein, Transfers includes all transfers of value to Defendant including, but not limited to, cash, checks, credit, airline tickets and rent-free use of various properties.

29.     Upon information and belief, Defendant possesses or controls financial records, together with other written and electronic information, regarding the Debtor (the "**Information**").

30.     At all times material hereto, Debtor was insolvent and under great pressure from his creditors.

31.     The Property is property of the estate pursuant to 11 U.S.C. §541(a).

32.     Debtor made the Transfers to Defendant without receiving a reasonably equivalent value in exchange for the Transfers at a time when the Debtor was engaged in or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction or when the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

33.     Debtor made the Transfers to Defendant without receiving a reasonably equivalent value in exchange for the Transfers at a time when the Debtor was insolvent or the Debtor became insolvent as a result of the Transfers.

34.     The Trustee believes that Defendant is in the possession or control of assets including, but not limited to the Harrison dog, Chanel ring and watch, fur coat and Property which are either recoverable by the Trustee by way of avoidance or remain property of the estate.

35.     Defendant is possession or control of Information and Property which she could easily secrete or transfer so as to avoid the Trustee's recovery thereof.

36.     The Court's intervention is required so as to prevent the estate from suffering irreparable harm by loss of the Property and Information.

37. The Trustee requested in his Complaint that the Court enjoin Defendant from disposing, transferring, encumbering, secreting or destroying the Harrison dog, Chanel ring and watch, fur coat and Property.

38. The Trustee further requested that the Court enjoin Defendant and require Defendant to turnover the Harrison dog, Chanel ring and watch, fur coat and Property.

39. The Trustee further requested an order directing Defendant to disclose all Property or Information in her possession or control and to allow the Trustee access thereto.

40. Since the commencement of this adversary proceeding, counsel for the Trustee has been informed that William R. Skolnick no longer represents the Defendant. He had previously appeared with Defendant at her Bankruptcy Rule 2004 examination.

41. Defendant has not defended or otherwise appeared in this matter except that on or about January 18, 2010, your Affiant received a phone message purporting to be from Defendant noting that she had been named in two actions and wanted to know how to go about obtaining a public defender. A phone number was left but a return call was not made as, at the time, it was believed that Defendant was represented by Mr. Skolnick. There has been no subsequent contact with Defendant.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of the Plaintiff, and against Defendant Christi M. Rowan, on the grounds that she has failed to answer the Summons and Adversary Complaint served upon her in this case, and for such other relief as is just and equitable.

**LEONARD, O'BRIEN**
**SPENCER, GALE & SAYRE, LTD.**

Dated: February 22, 2010

By ___/e/ Matthew R. Burton_____
Matthew R. Burton, #210018
Attorneys for Plaintiff
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Phone: (612) 332-1030

## <u>VERIFICATION</u>

     The undersigned, Matthew R. Burton, attorney for Randall L. Seaver, Trustee and Plaintiff, under penalty of perjury, hereby states that he has read the foregoing Application for Default Judgment and states that the information contained herein is true and correct to the best of his information and belief.

/e/ Matthew R. Burton

Dated:  February 22, 2010

_____

Matthew R. Burton[1]

417272

---

[1] The Trustee's counsel is verifying this application as he is personally familiar with the facts alleged herein.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re:                                                          BKY No.:  09-50779

Dennis E. Hecker,                                                          Chapter 7

                    Debtor.

_____
                                             Adv. Case No.:  10-5004

Randall L. Seaver, Trustee,

                    Plaintiff,

vs.

Christi M. Rowan,

                    Defendant.

_____

## AFFIDAVIT OF DEFAULT, IDENTIFICATION,
## MILITARY STATUS AND AMOUNT DUE

STATE OF MINNESOTA    )
                              ) ss.
COUNTY OF HENNEPIN    )

      Matthew R. Burton, being duly sworn on oath, deposes and says:

      1.      I am one of the attorneys for the Plaintiff in the above-captioned matter, and am authorized to provide legal services to the Plaintiff in this bankruptcy case.

      2.      No response, Answer, or communication of any kind has been received from Defendant Christi M. Rowan ("**Defendant**"), or from any person or entity purporting to act on behalf of such Defendant in this Adversary Proceeding except a phone message on January 18, 2010 asking about a public defender.

      3.      This adversary case was commenced on January 15, 2010.

4.      The Summons and Complaint were duly served on Defendant by certified mail, return receipt requested, and by first class mail on January 15, 2010.

5.      Defendant is not in the military service of the United States, on information and belief, and is not an infant or incompetent person, and said Defendant's last known address is:

Christi M. Rowan
1615 Northridge Drive
Medina, MN 55391

6.      Affiant states that he has read the Complaint filed in this action and knows the contents thereof, and that the same is true of his own knowledge and belief, based upon reliable hearsay, and that Defendant Christi M. Rowan is now indebted to the Plaintiff in the amount set forth in the Complaint.

**FURTHER YOUR AFFIANT SAYETH NOT.**

Dated:  February 22, 2010

/e/  Matthew R. Burton
_____
Matthew R. Burton

417274

2

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re:                                                          BKY No.:  09-50779

Dennis E. Hecker,                                                         Chapter 7

               Debtor.

_____
                                       Adv. Case No.:  10-5004

Randall L. Seaver, Trustee,

               Plaintiff,

vs.

Christi M. Rowan,

               Defendant.

_____

## AFFIDAVIT ON THE MERITS AND AMOUNT DUE

STATE OF MINNESOTA   )
                           ) ss.
COUNTY OF HENNEPIN   )

      Matthew R. Burton, being first duly sworn, deposes and states as follows:

      1.     I am counsel for Plaintiff Randall L. Seaver, Trustee ("**Trustee**") in this matter and I have personal knowledge about the facts herein as I have examined Defendant Christi M. Rowan ("**Defendant**") pursuant to Bankruptcy Rule 2004 and I have inspected the home in which she resides, 1615 Northridge Drive, Medina, MN 55391 ("**Northridge**").

      2.     Defendant and Debtor have been involved in a personal romantic relationship and cohabitate at Northridge along with some of their children.

      3.     Debtor has testified that Defendant had resided at Northridge, a home titled in Debtor's name and his former homestead, pursuant to a lease.

4.      Defendant's obligations under the purported lease were the issue of a contempt motion in the main bankruptcy case and that issue was resolved by this Court's approval of a settlement between the Trustee and Ralph Thomas, a friend of the Debtor. The settlement, however, did not resolve issues about the personal property within Northridge (other than a piano) or any other issues related to this case.

5.      Defendant is holding or controlling property of this bankruptcy estate which was owned by the Debtor prepetition, or was purchased with the Debtor's monies prepetition. All of the foregoing is referred to herein as the "**Property**."

6.      Upon information and belief, Defendant may nominally control or be the conduit for other assets owned by the Debtor that are held by, or in the name of, the Defendant. The Defendant is a willing participant in a scheme to secrete assets owned by the Debtor. Defendant has assisted with actual fraud upon Debtor's creditors and this bankruptcy estate.

7.      Debtor and Defendant each claim that Defendant paid for improvements at Northridge before the commencement of this case. In reality, the Debtor funded the improvements of which the majority of the remodeling was by Brent Rowan, Defendant's former husband, through his company, BCR Construction, Inc.

8.      In the year before filing, Northridge was significantly upgraded and many items were purchased for the home.

9.      In January 2009, Chrysler Financial commenced a lawsuit against Hecker seeking a judgment in excess of $400,000.000.00. In April, 2009, a judgment in the amount of $476,952,874.60 was entered against Hecker. The Debtor's schedules list assets of $18,509,972.15 and liabilities of $766,754,240.50.

10.     In November of 2008, Defendant leased a 2008 Land Rover Range Rover ("**RR1**") having a sticker price of $96,000.00.  That vehicle has a monthly lease payment of $2,178.16 per month.  The $7,500.00 cash needed at closing of the lease for RR1 was transferred to Defendant by the Debtor.

11.     The same month that Chrysler obtained its judgment, April 2009, the Debtor acquired a new SUV.  The Defendant assisted Debtor in obtaining a vehicle for Debtor. Defendant returned to the same car dealer where she obtained RR1 and this time, purchased in her name, at a cost of $86,026.00 for a 2008 Land Rover Range Rover ("**RR2**").

12.     In order to purchase RR2, Defendant claimed that she was an attorney earning $189,000.00 per year and provided the dealer with a falsified W2 for the year 2008 to support her asserted income.  Defendant knew that she would not otherwise qualify for financing.

13.     The down payment for RR2 of $13,000.00 was transferred to Defendant by Debtor and $1,000.00 was charged to her Teacher Federal Credit Union ("**TFCU**") credit card. The monthly payment for RR2 is $1,379.34 bringing the monthly payments for RR1 and RR2 to a total of $3,557.50.  Upon information and belief, Debtor has been funding most or all of the payments for RR1 and RR2, either directly or through conduits.

14.     Defendant claimed that her earned income has not varied significantly since her divorce in the fall of 2008.  However, her bank deposits since that time have significantly varied.

15.     In the year prior to filing, the Debtor caused over $235,000.00 in cash and checks to be transferred to Defendant.  Some of those monies were deposited into her account at Trustone Credit Union.  The funds came from the Debtor, monies owed to Debtor, accounts funded by Debtor, and from Debtor-controlled entities.  A list of apparent cash and check

transfers to Defendant deposited into her Trustone Credit Union account is attached to the Complaint as Exhibit E.

16.     Defendant also deposited monies from the Debtor into an account held by her at Associated Bank.  Those deposits exceeded at least $40,000.00 in the year prior to filing.  An itemization of apparent Hecker funded deposits into that account is attached to the Complaint as Exhibit G.

17.     Defendant also deposited monies transferred from Hecker into an account held at Wells Fargo Bank to which she had access.

18.     Furniture and other personal property, which are property of the bankruptcy estate, are located at Northridge.  Virtually anything at Northridge that was not the personal property of Defendant when she left her marriage with Brent Rowan, is property of the bankruptcy estate.

19.     The Debtor made transfers to or for the benefit of Defendant in the year prior to filing, through the charging of items for her benefit on his American Express and Visa cards in an amount exceeding $125,000.  Those charges included $60,000 for a fur coat, $15,000 for a watch, over $30,000 for a Harrison Dog, over $11,000 for lodging at the St. Regis Hotel in Aspen, CO, and other charges for lodging in Cabo San Lucas, airfare to Cabo, airfare to Hawaii, and lodging in Cabo San Lucas.

20.     Debtor has funded the Defendant's acquisition of RR1 and RR2, including the initial down payments and subsequent payments.

21.     Debtor paid for Defendant's lease of a luxury Minneapolis apartment located at 150 Portland Avenue South (at the former Whitney Hotel) from 2008 to 2009 at $4,000.00 per

month including a $4,000.00 deposit which was due back to Defendant at the commencement of this case.

22.     Debtor has funded tuition for Defendant's daughter at Breck School in an amount which is unknown.

23.     In the year prior to filing, Debtor has paid for Defendant and her family to travel to Mexico, Texas and Hawaii and for her stay at luxury hotels, such as the St. Regis in Aspen, Colorado ($11,555.90).  Examples of costs funded by the Debtor are lodging in Los Cabos, Mexico, which exceeded $3,747.00, travel costs including Phoenix (over $2,147.60), Hawaii (over $6,579.00) for Defendant and her children and discount travel certificates.

24.     In the year prior to filing, the Debtor funded many shopping ventures for Defendant including, but not limited to, Neiman Marcus (over $34,000.00), Gorsuch ($10,680.00), Gucci (Debtor indirectly financed Defendant's purchases in excess of $2,300.00), Belle Reve Boutique (Debtor funded at least $4,343.38) and other luxury retailers.  Debtor has allowed Defendant to use his store credit cards for purchases the amount of which is unknown. Debtor has funded cosmetic surgery for Defendant at a cost of at least $7,000.00.  Together, the preceding paragraphs, including the Lease constitute the "**Transfers**."

25.     As used herein, Transfers includes all transfers of value to Defendant including, but not limited to, cash, checks, credit, airline tickets and rent-free use of various properties.

26.     Upon information and belief, Defendant possesses or controls financial records, together with other written and electronic information, regarding the Debtor (the "**Information**").

27.     At all times material hereto, Debtor was insolvent and under great pressure from his creditors.

28.     The Property is property of the estate pursuant to 11 U.S.C. §541(a).

29.     Debtor made the Transfers to Defendant without receiving a reasonably equivalent value in exchange for the Transfers at a time when the Debtor was engaged in or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction or when the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

30.     Debtor made the Transfers to Defendant without receiving a reasonably equivalent value in exchange for the Transfers at a time when the Debtor was insolvent or the Debtor became insolvent as a result of the Transfers.

31.     The Trustee believes that Defendant is in the possession or control of assets including, but not limited to the Harrison dog, Chanel ring and watch, fur coat and Property which are either recoverable by the Trustee by way of avoidance or remain property of the estate.

32.     Defendant is possession or control of Information and Property which she could easily secrete or transfer so as to avoid the Trustee's recovery thereof.

33.     The Court's intervention is required so as to prevent the estate from suffering irreparable harm by loss of the Property and Information.

34.     The Trustee requested in his Complaint that the Court enjoin Defendant from disposing, transferring, encumbering, secreting or destroying the Harrison dog, Chanel ring and watch, fur coat and Property.

35.     The Trustee further requested that the Court enjoin Defendant and require Defendant to turnover the Harrison dog, Chanel ring and watch, fur coat and Property.

36.     The Trustee further requested an order directing Defendant to disclose all Property or Information in her possession or control and to allow the Trustee access thereto.

37.     Since the commencement of this adversary proceeding, counsel for the Trustee has been informed that William R. Skolnick no longer represents the Defendant. He had previously appeared with Defendant at her Bankruptcy Rule 2004 examination.

38.     Defendant has not defended or otherwise appeared in this matter except that on or about January 18, 2010, your Affiant received a phone message purporting to be from Defendant noting that she had been named in two actions and wanted to know how to go about obtaining a public defender. A phone number was left but a return call was not made as, at the time, it was believed that Defendant was represented by Mr. Skolnick. There has been no subsequent contact with Defendant.

39.     Damages are difficult to quantify in this matter as there remains much that is unknown to the Trustee and his counsel. However, for purposes of seeking a default judgment, the Trustee is willing to limit his request for damages to those listed in the Complaint. The relief sought falls into four categories: money damages, turnover of property, declaratory relief and injunctive relief.

40.     The Trustee, using the framework of the Complaint, alleges that money damages to be recovered in this matter are:

      a.    $242,675.61 (total of Exhibits E and G to the Complaint);

      b.    $20,000 (credit card charges per paragraph 26 of the Complaint less items sought for turnover, below);

      c.    $56,000 (rent and deposit at the Whitney per paragraph 28 of the Complaint);

d. 24,029.50 (travel expenses per paragraph 30 of the Complaint);

e. $56,023.38 (personal expenses per paragraph 31 of the Complaint);

f. $40,172.40 (amounts paid on RR1 paragraphs 14 through 17 of the Complaint); and,

g. $24,034.72 (amounts paid on RR2 paragraphs 14 through 17 of the Complaint).

Total: **$462,935.61** (which the Trustee will reduce to $425,000 for judgment purposes).

41. Although the monetary values are not precise, they are believed to be substantially understated and deemed admitted by Defendant by her failure to Answer.

42. The following items are subject to the Trustee's demand for turnover:

a. Furnishings and personal property at Northridge (excluding the piano) including, but not limited to, televisions, pool table, tanning bed, and furniture;

b. $60,000 fur coat;

c. $15,000 Chanel watch and ring; and,

d. $30,000 Harrison dog.

43. The Trustee seeks the following declaratory relief:

   a. The personal property in Northridge acquired from and after June 4, 2008 is property of this bankruptcy estate;

   b. That any equity in aforementioned Range Rovers is property of the bankruptcy estate;

   c. The refund of the Whitney Deposit is property of the estate (if yet with landlord); and,

   d. Any personal or real property in the name of Defendant which was acquired with funding of the Debtor is property of the estate.

44. The Trustee seeks the following injunctive relief:

   a. That Defendant be enjoined from disposing, transferring, encumbering, secreting or destroying the Harrison dog, Chanel ring and watch, fur coat and other property;

   b. That Defendant be ordered to turnover the Harrison dog, Chanel ring and watch, fur coat and other property; and,

   c. That Defendant be directed to immediately disclose all property of the Debtor in her custody or control, and to provide all information about Debtor's financial affairs in her possession or control, and to allow the Trustee access to such property and information.

**FURTHER YOUR AFFIANT SAYETH NOT.**

/e/ Matthew R. Burton

_____

Matthew R. Burton

417267

9

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re:                                                              BKY No.:  09-50779

Dennis E. Hecker,                                                          Chapter 7

                        Debtor.

_____                         Adv. Case No.:  10-5004

Randall L. Seaver, Trustee,

                        Plaintiff,

vs.

Christi M. Rowan,

                        Defendant.

_____

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT

This matter came before the court on plaintiff's application for entry of default judgment against defendant Christi M. Rowan.

Based upon the application and all of the files and records in this matter, the court makes the following:

### <u>FINDINGS OF FACT</u>

1.      The plaintiff is the trustee in the debtor's case.

2.      This bankruptcy case was commenced on June 4, 2009, by the filing of a voluntary Chapter 7 petition.

3.      The summons and complaint were duly served on defendant by certified mail, return receipt requested, and by first class mail on January 15, 2010.

4.      Defendant has failed to answer.

5.      Defendant and debtor have been involved in a personal romantic relationship and cohabitate at Northridge along with some of their children.

6.      Defendant had resided at Northridge, a home titled in debtor's name and his former homestead, pursuant to an alleged lease.

7.      Defendant's obligations under the purported lease were the issue of a contempt motion in the main bankruptcy case and that issue was resolved by this court's approval of a settlement between the trustee and Ralph Thomas, a friend of the debtor. That settlement, however, did not resolve issues about the personal property within Northridge.

8.      Defendant is holding or controlling property of this bankruptcy estate which was owned by the debtor prepetition, or was purchased with the debtor's monies prepetition.

9.      Defendant may nominally control or be the conduit for other assets owned by the debtor that are held by, or in the name of, the defendant. Defendant is a willing participant in a scheme to secrete assets owned by the debtor. Defendant has assisted with actual fraud upon Debtor's creditors and this bankruptcy estate.

10.     Debtor and defendant each claim that defendant paid for improvements at Northridge before the commencement of this case. In reality, debtor funded the improvements of which the majority of the remodeling was by Brent Rowan, defendant's former husband, through his company, BCR Construction, Inc.

11.     In the year before filing, Northridge was significantly upgraded and many items were purchased for the home.

12.     In January 2009, Chrysler Financial commenced a lawsuit against debtor seeking a judgment in excess of $400,000.000.00. In April, 2009, a judgment in the amount of

$476,952,874.60 was entered against debtor. The debtor's schedules list assets of $18,509,972.15 and liabilities of $766,754,240.50.

13. In November of 2008, defendant leased a 2008 Land Rover Range Rover having a sticker price of $96,000.00. That vehicle has a monthly lease payment of $2,178.16 per month. The $7,500.00 cash needed at closing of the lease was transferred to defendant by the debtor.

14. The same month that Chrysler obtained its judgment, April 2009, the debtor acquired a new SUV. The defendant assisted debtor in obtaining a vehicle for debtor. Defendant returned to the same car dealer where she obtained the prior vehicle and this time, purchased in her name, at a cost of $86,026.00 another 2008 Land Rover Range Rover.

15. In order to purchase the second vehicle, defendant claimed that she was an attorney earning $189,000.00 per year and provided the dealer with a falsified W2 for the year 2008 to support her asserted income. Defendant knew that she would not otherwise qualify for financing.

16. The down payment for the second Range Rover of $13,000.00 was transferred to defendant by debtor and $1,000.00 was charged to her Teacher Federal Credit Union credit card. The monthly payment for the second vehicle is $1,379.34 bringing the monthly payments for the vehicles to a total of $3,557.50. Upon information and belief, debtor has been funding most or all of the payments for the vehicles, either directly or through conduits.

17. Defendant claimed that her earned income has not varied significantly since her divorce in the fall of 2008. However, her bank deposits since that time have significantly varied.

18. In the year prior to filing, the debtor caused over $235,000.00 in cash and checks to be transferred to defendant. Some of those monies were deposited into her account at Trustone

Credit Union. The funds came from the debtor, monies owed to debtor, accounts funded by debtor, and from debtor-controlled entities.

19.     Defendant also deposited monies from the debtor into an account held by her at Associated Bank. Those deposits exceeded at least $40,000.00 in the year prior to filing.

20.     Defendant also deposited monies transferred from Hecker into an account held at Wells Fargo Bank to which she had access.

21.     The debtor made transfers to or for the benefit of defendant in the year prior to filing, through the charging of items for her benefit on his American Express and Visa cards in an amount exceeding $125,000. Those charges included $60,000 for a fur coat, $15,000 for a watch, over $30,000 for a Harrison Dog, over $11,000 for lodging at the St. Regis Hotel in Aspen, CO, and other charges for lodging in Cabo San Lucas, airfare to Cabo, airfare to Hawaii, and lodging in Cabo San Lucas.

22.     Debtor has funded the defendant's acquisition of two vehicles, including the initial down payments and subsequent payments.

23.     Debtor paid for defendant's lease of a luxury Minneapolis apartment located at 150 Portland Avenue South (at the former Whitney Hotel) from 2008 to 2009 at $4,000.00 per month including a $4,000.00 deposit which was due back to defendant at the commencement of this case.

24.     Debtor has funded tuition for defendant's daughter at Breck School.

25.     In the year prior to filing, debtor has paid for defendant and her family to travel to Mexico, Texas and Hawaii and for her stay at luxury hotels, such as the St. Regis in Aspen, Colorado ($11,555.90). Examples of costs funded by the debtor are lodging in Los Cabos, Mexico,

which exceeded $3,747.00, travel costs including Phoenix (over $2,147.60), Hawaii (over $6,579.00) for defendant and her children and discount travel certificates.

26.     In the year prior to filing, the debtor funded many shopping ventures for defendant including, but not limited to, Neiman Marcus (over $34,000.00), Gorsuch ($10,680.00), Gucci (debtor indirectly financed defendant's purchases in excess of $2,300.00), Belle Reve Boutique (debtor funded at least $4,343.38) and other luxury retailers.  Debtor has allowed defendant to use his store credit cards for purchases the amount of which is unknown.  Debtor has funded cosmetic surgery for defendant at a cost of at least $7,000.00.

27.     As used herein, Transfers includes all transfers of value to defendant including, but not limited to, cash, checks, credit, airline tickets and rent-free use of various properties.

28.     Upon information and belief, defendant possesses or controls financial records, together with other written and electronic information, regarding the debtor.

29.     At all times material hereto, debtor was insolvent and under great pressure from his creditors.

## CONCLUSIONS OF LAW

1.     This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334.  This case arises under 11 U.S.C. §§541, 544, 548, 550 and 551 and under Minn. Stat. §§513.44 and 513.45.

2.     Defendant Christi M. Rowan is in default pursuant to Bankruptcy Rule 7055 and Rule 55 of the Federal Rules of Civil Procedure.

3.     The personal property located at Northridge with the exception of a piano is property of the estate pursuant to 11 U.S.C. §541(a).

4.      Debtor made the transfers described in the complaint to defendant without receiving a reasonably equivalent value in exchange for the transfers at a time when the debtor was engaged in or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or when the debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

5.      Debtor made the transfers to defendant without receiving a reasonably equivalent value in exchange for the transfers at a time when the debtor was insolvent or the debtor became insolvent as a result of the transfers.

6.      Defendant is in the possession or control of assets including, but not limited to a Harrison dog, Chanel ring and watch, fur coat and property which are either recoverable by the trustee by way of avoidance or remain property of the estate.

7.      Defendant is possession or control of information and property which she could easily secrete or transfer so as to avoid the trustee's recovery thereof.

8.      The court's intervention is required so as to prevent the estate from suffering irreparable harm by loss of the property and information.

9.      The trustee is entitled to an order enjoining defendant from disposing, transferring, encumbering, secreting or destroying the Harrison dog, Chanel ring and watch, fur coat and property.

10.     The trustee is entitled to an order enjoining defendant and requiring defendant to turnover the Harrison dog, Chanel ring and watch, fur coat and Property.

11.	The trustee is entitled to an order directing defendant to disclose all property or information in her possession or control and to allow the trustee access thereto.

12.	Defendant has not defended or otherwise appeared in this matter except that on or about January 18, 2010, she contacted the trustee's counsel leaving a phone message noting that she had been named in two actions and wanted to know how to go about obtaining a "public defender."

13.	The trustee is entitled to a money judgment in the amount of $398,728.49 based on the following:

    a.	$242,675.61 (total of Exhibits E and G to the Complaint);

    b.	$20,000 (credit card charges per paragraph 26 of the Complaint less items sought for turnover, below);

    c.	$56,000 (rent and deposit at the Whitney per paragraph 28 of the Complaint);

    d.	$24,029.50 (travel expenses per paragraph 30 of the Complaint);

    e.	$56,023.38 (personal expenses per paragraph 31 of the Complaint).

    f.	$40,172.40 (amounts paid on the first vehicle per paragraphs 14 through 17 of the Complaint); and,

    g.	$24,034.72 (amounts paid on the second vehicle per paragraphs 14 through 17 of the Complaint).

Total: **$462,935.61**(which the Trustee has asked be reduced to $425,000 for judgment purposes).

14. The following items are subject to the trustee's demand for turnover:

    a. Furnishings and personal property at Northridge including, but not limited to, televisions, pool table, tanning bed, and furniture;

    b. $60,000 fur coat;

    c. $15,000 Chanel watch; and,

    d. $30,000 Harrison dog.

15. The Trustee is entitled to declaratory relief as follows:

    a. The personal property in Northridge acquired from and after June 4, 2008 is property of this bankruptcy estate;

    b. That any equity in aforementioned Range Rovers is property of the bankruptcy estate;

    c. The refund of the Whitney Deposit is property of the estate (if yet with landlord); and,

    d. Any personal or real property in the name of defendant which was acquired with funding of the debtor is property of the estate.

16. The Trustee is entitled to the following injunctive relief:

    a. That defendant be enjoined from disposing, transferring, encumbering, secreting or destroying the Harrison dog, Chanel ring and watch, fur coat and other property;

    b. That defendant be ordered to turnover the Harrison dog, Chanel ring and watch, fur coat and other property; and,

  c.  That defendant be directed to immediately disclose all property of the debtor in her custody or control, and to provide all information about debtor's financial affairs in her possession or control, and to allow the Trustee access to such property and information.

## ORDER FOR JUDGMENT

1. Judgment shall be entered against defendant in the amount of $425,000.00.

2. Defendant is directed to immediately turnover, or make available to the trustee the following:

  a.  Furnishings and personal property at Northridge (excluding the piano) including, but not limited to, televisions, pool table, tanning bed, and furniture;

  b.  $60,000 fur coat;

  c.  $15,000 Chanel watch and ring; and,

  d.  $30,000 Harrison dog.

3. The Trustee's request for declaratory relief is granted and the following is hereby adjudged:

  a.  The personal property in Northridge acquired from and after June 4, 2008 is property of this bankruptcy estate;

  b.  That any equity in aforementioned Range Rovers is property of the bankruptcy estate;

  c.  The refund of the Whitney Deposit is property of the estate (if yet with landlord); and,

    d.        Any personal or real property in the name of defendant which was acquired with funding of the debtor is property of the estate.

4.       The Trustee's request for injunctive relief is granted as follows:

    a.        Defendant is hereby enjoined from disposing, transferring, encumbering, secreting or destroying the Harrison dog, Chanel ring and watch, fur coat and other property;

    b.        Defendant is directed to turnover the Harrison dog, Chanel ring and watch, fur coat and other property; and,

    c.        Defendant is directed to immediately disclose all property of the debtor in her custody or control, and to provide all information about debtor's financial affairs in her possession or control, and to allow the Trustee access to such property and information.

Let judgment be entered accordingly.

_____

417275

                           _____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re:                                                    BKY No.:  09-50779

Dennis E. Hecker,                                                      Chapter 7

                              Debtor.
_____
                                                          Adv. Case No.:  10-5004

Randall L. Seaver, Trustee,

                              Plaintiff,

vs.

Christi M. Rowan,

                              Defendant.
_____

## UNSWORN CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2010, I caused the following documents:

***Application for Default Judgment, Affidavit of Default, Identification, Military Status, and
Amount Due, Affidavit of the Merits and Amount due, and Proposed Order***

to be mailed by regular first class mail, postage paid, to the following:

Christi M. Rowan
1615 Northridge Drive
Medina, MN 55391


                                                    /e/ Matthew R. Burton
Dated:  February 22, 2010              _____
                                                    Matthew R. Burton
                                                    100 South Fifth Street, Suite 2500
                                                    Minneapolis, MN  55402
                                                    (612) 332-1030

417376