# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| In re: | BKY No.: 09-50779 |
| Dennis E. Hecker, | Chapter 7 |
| Debtor. | |

_____

Adv. Case No.: 10-5004

Randall L. Seaver, Trustee,

        Plaintiff,

vs.

Christi M. Rowan,

        Defendant.

_____

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT

This proceeding is before the court on the plaintiff's application for default judgment.

Based upon the application and the files and records, the court makes the following:

## FINDINGS OF FACT

1.    The plaintiff is the trustee in the debtor's case.

2.    This bankruptcy case was commenced on June 4, 2009, by the filing of a voluntary Chapter 7 petition.

3.    The summons and complaint were duly served on the defendant by certified mail, return receipt requested, and by first class mail on January 15, 2010.

4.    Defendant has failed to answer.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *02/23/2010*
Lori Vosejpka, Clerk, by LMH

5. The defendant and the debtor have been involved in a personal romantic relationship and cohabitate at Northridge along with some of their children.

6. The defendant had resided at Northridge, a home titled in the debtor's name pursuant to a lease.

7. The defendant's obligations under the purported lease were the issue of a contempt motion in the case and that issue was resolved by the court's approval of a settlement between the trustee and Ralph Thomas, a friend of the debtor. That settlement, however, did not resolve issues about the personal property within Northridge.

8. The defendant is holding or controlling property of this bankruptcy estate which was owned by the debtor prepetition, or was purchased with the debtor's monies prepetition.

9. The defendant nominally controls or is the conduit for other assets owned by the debtor that are held by, or in the name of, the defendant. The defendant is a willing participant in a scheme to secrete assets owned by the debtor. The defendant has assisted with actual fraud upon the debtor's creditors and thebankruptcy estate.

10. The debtor and the defendant each claim that the defendant paid for improvements at Northridge before the commencement of this case. In reality, debtor funded the improvements of which the majority of the remodeling was by Brent Rowan, defendant's former husband, through his company, BCR Construction, Inc.

11. In the year before filing, Northridge was significantly upgraded and many items were purchased for the home.

12. In January 2009, Chrysler Financial commenced a lawsuit against the debtor seeking a judgment in excess of $400,000.000.00. In April, 2009, a judgment in the amount of

$476,952,874.60 was entered against the debtor. The debtor's schedules list assets of $18,509,972.15 and liabilities of $766,754,240.50.

13. In November of 2008, the defendant leased a 2008 Land Rover Range Rover having a sticker price of $96,000.00. That vehicle has a monthly lease payment of $2,178.16 per month. The $7,500.00 cash needed at closing of the lease was transferred to the defendant by the debtor.

14. The same month that Chrysler obtained its judgment, April 2009, the debtor acquired a new SUV. The defendant assisted the debtor in obtaining a vehicle for the debtor. The defendant returned to the same car dealer where she obtained the prior vehicle and this time, purchased in her name, at a cost of $86,026.00 another 2008 Land Rover Range Rover.

15. In order to purchase the second vehicle, the defendant claimed that she was an attorney earning $189,000.00 per year and provided the dealer with a falsified W2 for the year 2008 to support her asserted income. The defendant knew that she would not otherwise qualify for financing.

16. The down payment for the second Range Rover of $13,000.00 was transferred to the defendant by the debtor and $1,000.00 was charged to her Teacher Federal Credit Union credit card. The monthly payment for the second vehicle is $1,379.34 bringing the monthly payments for the vehicles to a total of $3,557.50. The debtor has been funding most or all of the payments for the vehicles, either directly or through conduits.

17. The defendant claimed that her earned income has not varied significantly since her divorce in the fall of 2008. However, her bank deposits since that time have significantly varied.

18. In the year prior to filing, the debtor caused over $235,000.00 in cash and checks to be transferred to the defendant. Some of those monies were deposited into her account at Trustone

Credit Union. The funds came from the debtor, monies owed to debtor, accounts funded by debtor, and from debtor-controlled entities.

19. The defendant also deposited monies from the debtor into an account held by her at Associated Bank. Those deposits exceeded at least $40,000.00 in the year prior to filing.

20. The defendant also deposited monies transferred from the debtor into an account held at Wells Fargo Bank to which she had access.

21. The debtor made transfers to or for the benefit of the defendant in the year prior to filing, through the charging of items for her benefit on his American Express and Visa cards in an amount exceeding $125,000. Those charges included $60,000 for a fur coat, $15,000 for a watch, over $30,000 for a Harrison Dog, over $11,000 for lodging at the St. Regis Hotel in Aspen, CO, and other charges for lodging in Cabo San Lucas, airfare to Cabo, airfare to Hawaii, and lodging in Cabo San Lucas.

22. The debtor has funded the defendant's acquisition of two vehicles, including the initial down payments and subsequent payments.

23. The debtor paid for the defendant's lease of a luxury Minneapolis apartment located at 150 Portland Avenue South (at the former Whitney Hotel) from 2008 to 2009 at $4,000.00 per month including a $4,000.00 deposit which was due back to defendant at the commencement of this case.

24. The debtor has funded tuition for the defendant's daughter at Breck School.

25. In the year prior to filing, the debtor has paid for the defendant and her family to travel to Mexico, Texas and Hawaii and for her stay at luxury hotels, including the St. Regis in Aspen, Colorado ($11,555.90), lodging in Los Cabos, Mexico,

which exceeded $3,747.00, travel costs including Phoenix (over $2,147.60), Hawaii (over $6,579.00) for defendant and her children and discount travel certificates.

26. In the year prior to filing, the debtor funded many shopping ventures for the defendant including, but not limited to, Neiman Marcus (over $34,000.00), Gorsuch ($10,680.00), Gucci (debtor indirectly financed defendant's purchases in excess of $2,300.00), Belle Reve Boutique (debtor funded at least $4,343.38) and other luxury retailers. The debtor has allowed the defendant to use his store credit cards for purchases the amount of which is unknown. The debtor has funded cosmetic surgery for the defendant at a cost of at least $7,000.00.

27. The debtos transfers includes all transfers of value to the defendant including, but not limited to, cash, checks, credit, airline tickets and rent-free use of various properties.

28. The defendant possesses or controls financial records, together with other written and electronic information, regarding the debtor.

29. At all times material hereto, debtor was insolvent and under great pressure from his creditors.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334. This case arises under 11 U.S.C. §§541, 544, 548, 550 and 551 and under Minn. Stat. §§513.44 and 513.45.

2. Defendant Christi M. Rowan is in default pursuant to Bankruptcy Rule 7055 and Rule 55 of the Federal Rules of Civil Procedure.

3. The personal property located at Northridge with the exception of a piano is property of the estate pursuant to 11 U.S.C. §541(a).

4. Debtor made the transfers described above to the defendant without receiving reasonably equivalent value in exchange for the transfers at a time when the debtor was engaged in or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or when the debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

5. Debtor made the transfers to the defendant without receiving a reasonably equivalent value in exchange for the transfers at a time when the debtor was insolvent or the debtor became insolvent as a result of the transfers.

6. The defendant is in the possession or control of assets including, but not limited to a Harrison dog, Chanel ring and watch, fur coat and property which are either recoverable by the trustee by way of avoidance or remain property of the estate.

7. The defendant is possession or control of information and property which she could easily secrete or transfer so as to avoid the trustee's recovery.

8. The court's intervention is required so as to prevent the estate from suffering irreparable harm by loss of the property and information.

9. The plaintiff is entitled to an order enjoining the defendant from disposing, transferring, encumbering, secreting or destroying the Harrison dog, Chanel ring and watch, fur coat and property.

10. The plaintiff is entitled to an order enjoining defendant and requiring the defendant to turnover the Harrison dog, Chanel ring and watch, fur coat and property.

11. The plaintiff is entitled to an order directing the defendant to disclose all property or information in her possession or control and to allow the trustee access thereto.

12. The defendant has not defended or otherwise appeared in this proceeding.

13. The plaintiff is entitled to recover from the defendant the amount of $398,728.49 based on the following:

    a.     $242,675.61 (total of Exhibits E and G to the Complaint);

    b.     $20,000 (credit card charges per paragraph 26 of the Complaint less items sought for turnover, below);

    c.     $56,000 (rent and deposit at the Whitney per paragraph 28 of the Complaint);

    d.     $24,029.50 (travel expenses per paragraph 30 of the Complaint);

    e.     $56,023.38 (personal expenses per paragraph 31 of the Complaint).

    f.     $40,172.40 (amounts paid on the first vehicle per paragraphs 14 through 17 of the Complaint); and,

    g.     $24,034.72 (amounts paid on the second vehicle per paragraphs 14 through 17 of the Complaint).

Total: **$462,935.61**(which the plaintiff has asked be reduced to $425,000 for judgment purposes).

14. The plaintiff is entitled to recover from the defendant:

   a. Furnishings and personal property at Northridge including, but not limited to, televisions, pool table, tanning bed, and furniture;

   b. $60,000 fur coat;

   c. $15,000 Chanel watch; and,

   d. $30,000 Harrison dog.

15. The plaintiff is entitled to declaratory relief as follows:

   a. The personal property in Northridge acquired from and after June 4, 2008 is property of this bankruptcy estate;

   b. That any equity in the Range Rovers is property of the bankruptcy estate;

   c. The refund of the Whitney Deposit is property of the estate (if still held by the landlord); and,

   d. Any personal or real property in the name of defendant which was acquired with funding of the debtor is property of the estate.

16. The plaintiff is entitled to the following injunctive relief:

   a. The defendant be enjoined from disposing, transferring, encumbering, secreting or destroying the Harrison dog, Chanel ring and watch, fur coat and other property;

   b. The defendant be ordered to turnover the Harrison dog, Chanel ring and watch, fur coat and other property; and,

    c.       The defendant be directed to disclose all property of the debtor in her custody or control, and to provide all information about the debtor's financial affairs in her possession or control, and to allow the plaintiff access to such property and information.

## ORDER FOR JUDGMENT

1. The plaintiff shall recover from the defendant the sum of $425,000.00.

2. The defendant shall turn over to the plaintiff:

    a. Furnishings and personal property at Northridge (excluding the piano) including, but not limited to, televisions, pool table, tanning bed, and furniture;

    b. $60,000 fur coat;

    c. $15,000 Chanel watch and ring; and,

    d. $30,000 Harrison dog.

3. 
    a. The personal property in Northridge acquired from and after June 4, 2008 is property of this bankruptcy estate;

    b. That any equity in aforementioned Range Rovers is property of the bankruptcy estate;

    c. The refund of the Whitney Deposit is property of the estate (if still held by the landlord); and,

d.  Any personal or real property in the name of defendant which was acquired with funding of the debtor is property of the estate.

4.

   a.  The defendant is enjoined from disposing, transferring, encumbering, secreting or destroying the Harrison dog, Chanel ring and watch, fur coat and other property;

   b.  The defendant is directed to turn over the Harrison dog, Chanel ring and watch, fur coat and other property to the plaintiff; and,

   c.  The defendant shall immediately disclose all property of the debtor in her custody or control, provide all information about the debtor's financial affairs in her possession or control, and to allow the trustee access to such property and information.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated__ February 23, 2010 _____

417275

/e/ Robert J. Kressel

Robert J. Kressel
United States Bankruptcy Judge